UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARITA SLAGER,<br><br>                      Plaintiff,<br><br>  -against-<br><br>GLU MOBILE, INC., NICK EARL, NICCOLO DE MASI, ERIC BALL, ANN MATHER, HANY NADA, BENJAMIN T. SMITH, IV, GREG BRANDEAU, BEN FEDER, GABY TOLEDANO, and DARLA K. ANDERSON,<br><br>                      Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Sharita Slager ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Glu Mobile, Inc. ("Glu Mobile" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Glu Mobile, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor. Plaintiff's claims arise in connection with the proposed acquisition of Glu Mobile by Electronic Arts Inc. ("Electronic Arts") and its subsidiary, Giants Acquisitions Sub, Inc. ("Merger Sub") (the "Proposed Merger").

1

2. On February 8, 2021, Glu Mobile entered into an agreement and plan of merger by and among (i) the Company, (ii) Electronic Arts, and (iii) Merger Sub (the "Merger Agreement"). Pursuant to the which stockholders of Glu Mobile will receive $12.50 in cash for each share of Glu Mobile common stock they own (the "Merger Consideration").

3. On March 12, 2021, to convince Glu Mobile's shareholders to vote for the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy (the "Proxy") with the SEC.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Delaware State law. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Glu Mobile's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' misconduct.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. At 1316.

8. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Glu Mobile's common stock trades on the Nasdaq, which is headquartered in this District, and the Company hired financial and legal advisors for the purposes of the Proposed Merger, which are also located in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Glu Mobile common stock.

10. Defendant Glu Mobile, Inc. is incorporated in Delaware and maintains its principal executive offices at 875 Howard Street, Suite 100, San Francisco, California 94103. The Company's common stock trades on the Nasdaq under the ticker symbol "GLUU".

11. Individual Defendant Nick Earl is, and at all relevant times has been, the Chief Executive Officer, President and a director for the Company.

12. Individual Defendant Niccolo de Masi is, and at all relevant times has been, the Chairman of the Board.

13. Individual Defendant Eric Ball is, and at all relevant times has been, a director of the Company.

14. Individual Defendant Ann Mather is, and at all relevant times has been, a director of the Company.

15. Individual Defendant Hany Nada is, and at all relevant times has been, a director of the Company.

16. Individual Defendant Benjamin T. Smith, IV is, and at all relevant times has been, a director of the Company.

17. Individual Defendant Greg Brandeau is, and at all relevant times has been, a director of the Company.

18. Individual Defendant Ben Feder is, and at all relevant times has been, a director of the Company.

19. Individual Defendant Gaby Toledano is, and at all relevant times has been, a director of the Company.

20. Individual Defendant Darla K. Anderson is, and at all relevant times has been, a director of the Company.

21. The defendants referred to in ¶¶ 11-20 are collectively referred to herein as the "Individual Defendants" or the "Board", and together with Glu Mobile as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.    Background of the Proposed Merger

22. Glu Mobile is a leading developer and publisher of mobile games.

23. The Company's diverse portfolio features top-grossing and award-winning original and licensed IP titles, including: Covet Fashion, Deer Hunter, Design Home, Diner DASH

Adventures, Disney Sorcerer's Arena, Kim Kardashian: Hollywood, and MLB Tap Sports Baseball, which are available worldwide on various platforms including the App Store and Google Play.

24. On February 8, 2021, Glu Mobile authorized the issuance of a press release announcing the Proposed Merger, which states in relevant part:

**Electronic Arts to Acquire Glu Mobile, Creating a New Global Leader in the Largest and Fastest Growing Gaming Segment**

REDWOOD CITY, Calif.--(BUSINESS WIRE)--Electronic Arts Inc. (NASDAQ: EA), a global leader in interactive entertainment, and Glu Mobile, Inc. (NASDAQ: GLUU), a leading global developer and publisher of mobile games including Design Home, Covet Fashion, and MLB Tap Sports Baseball, have entered into a definitive agreement under which Electronic Arts will acquire Glu Mobile. Under the terms of the agreement, EA will acquire Glu for $2.1 billion in enterprise value. Glu stockholders will receive $12.50 in cash for each share of Glu stock, representing a 36% premium to Glu's closing share price on February 5, 2021. Upon closing, the acquisition will be immediately accretive to Electronic Arts' total net bookings, and is expected to grow underlying profitability beginning in its first year.

The acquisition will immediately add significant scale to Electronic Arts' mobile games business. The combination of Electronic Arts and Glu creates a leading mobile product portfolio that includes more than 15 top live services across fast-growing genres with a combined $1.32 billion in bookings over the last twelve months. Bringing together the best-in-class mobile development teams at Glu and Electronic Arts' mobile business, with a collective portfolio of powerful IP in sports, lifestyle, RPG, casual and other genres, and leveraging Electronic Arts' marketing and distribution strength to generate global reach, the combined organization will build on EA's network of 430 million players, including more than 100 million monthly active players in mobile, and expand to new audiences and demographics all over the world.

"Our acquisition of Glu combines amazing teams and deeply-engaging products to create a mobile games leader with proven expertise across many fast-growing genres," said Andrew Wilson, CEO of Electronic Arts. "Mobile continues to grow as the biggest gaming platform in the world, and with the addition of Glu's games and talent, we're doubling the size of our mobile business. With a deep IP portfolio and an expanding global audience, we'll deliver more exciting experiences for our players and drive further growth for Electronic Arts."

"This transaction is the culmination of the tremendous work of the Glu team to deliver world-class interactive experiences for our players, while driving business momentum that has led to strong financial and operational results. It represents a terrific outcome for all of our stockholders and other key constituents," said Nick Earl, CEO of Glu. "As part of Electronic Arts, we will continue capitalizing on the opportunities ahead in the expanding mobile gaming industry."

The strategic rationale for the acquisition includes:

- Creating a Leading Mobile Portfolio Across Key Genres. The complementary nature of Electronic Arts and Glu's successful products will create a portfolio that spans many of the biggest and most popular genres of mobile games, including sports, RPG, lifestyle, casual, and mid-core games. The combined organization will have a demographically diverse audience, with significant opportunities for franchise and market expansion.

- Expanding Successful, Scalable Live Services. Both Electronic Arts and Glu have proven success creating mobile live service games that deeply engage large communities over many years and deliver strong recurring revenue. The combined expertise of the two organizations unlocks potential for further success. Glu's franchises like Design Home, Covet Fashion, and MLB Tap Sports Baseball will benefit from Electronic Arts' global licensing and distribution capabilities to bring them to new markets and more players. Glu's expertise in building and monetizing sports and casual mobile games, combined with Electronic Arts' industry-leading IP in sports and beyond, will accelerate the creation of exciting new experiences for broad audiences.

- Experienced Creative Leadership & Enhanced Team Capabilities. Glu brings a talented team including more than 500 mobile game developers (and nearly 800 total employees), adding significant scale to Electronic Arts' mobile-focused organization. Glu's creative leaders are established and well-known to Electronic Arts, with similar focus on creating highly successful mobile games with longevity. The combination of proven mobile leadership, deeply talented teams, genre expertise, long-running franchises and IP, and technology across the two organizations will be a catalyst to delivering new experiences and further growth.

- Accelerating Growth. The combination of Electronic Arts and Glu will be a mobile growth engine. With strong, recurring revenue across a leading portfolio of live services, strength in key mobile genres, a deep roster of owned and licensed IP, access to a large-scale and growing player network, and ability to reach into new regions and markets, the acquisition will be immediately accretive to EA's total net bookings and is expected to grow underlying profitability beginning in its first year.

An investor presentation outlining the key aspects of the planned acquisition is available on EA's investor relations website, at ir.ea.com.

**Details on the Proposed Transaction**

The board of directors of each of Electronic Arts and Glu Mobile have approved the transaction and the Glu board recommends that Glu stockholders approve the transaction and adopt the merger agreement. Under the terms of the agreement, Glu stockholders will receive $12.50 in cash for each share of Glu stock, representing an equity value of $2.4 billion, and a total enterprise value of $2.1 billion including Glu's net cash of $364 million. The transaction is anticipated to close in the quarter ending June 30, 2021, subject to approval by the Glu stockholders, the receipt of required regulatory approvals and other customary closing conditions.

25.    The Proposed Merger comes in the midst of the COVID-19 pandemic ("Pandemic"), at a time when stocks throughout the world are subject to great uncertainty and radical change. The Merger Consideration does not compensate stockholders for the intrinsic value of their shares. And so, piggybacking off the Pandemic, the Proposed Merger may provide a substantial discount to Electronic Arts, at the expense of the common stockholders who will not see the intrinsic value of their shares realized nor be able to partake in the continued growth of the Company. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for stockholders to properly determine how to vote their shares.

B.    **The Misleading Proxy Omits Material Information**

26.    On March 12, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information necessary for Glu Mobile's stockholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act,

and SEC Rule 14a-9.

27. ***First***, First, the Proxy Statement omits material information regarding the Company's financial projections.

28. The Proxy fails to disclose, for each set of projections: (i) all line items used to calculate bookings and adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30. ***Second***, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Morgan Stanley & Co. LLC ("Morgan Stanley" together with Goldman Sachs, the "Financial Advisors").

31. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the terminal values for the Company; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iii) the net cash used in the analysis; and (iv) the fully diluted shares of Glu Mobile common stock.

32. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy fails to disclose: (i) the net debt used in the analysis; and (ii) the individual inputs and assumptions underlying the discount rate used in the analysis.

33. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy fails to disclose: (i) the closing dates of the transactions; (ii) the total values of the

transactions; (iii) the net cash used in the analysis; and (iv) the fully diluted shares of Glu Mobile common stock.

34. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

35. With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy fails to disclose: (i) the cash and debt used in the analysis; and (ii) the outstanding shares of Glu Mobile common stock on a fully-diluted basis.

36. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rate used in the analysis; (ii) projected net cash; and (iii) the outstanding shares of Glu Mobile common stock on a fully-diluted basis.

37. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the terminal values for the Company; (ii) the individual inputs and assumptions underlying the discount rates used in the analysis; (iii) the Company's cash and debt; and (iv) the outstanding shares of Glu Mobile common stock on a fully-diluted basis.

38. With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy fails to disclose: (i) the total values of the transactions; and (ii) the announcement and closing dates of the transactions.

39. With respect to Morgan Stanley's *Illustrative Precedent Premiums Analysis*, the Proxy fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

40. With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets Analysis*, the Proxy fails to disclose: (i) the price targets observed in the analysis; and (ii) the

sources thereof.

41. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42. ***Third***, the Proxy Statement omits material information regarding the Company's additional financial advisor, UBS Securities LLC ("UBS").

43. The Proxy Statement fails to disclose the terms of UBS's engagement, including: (i) the amount of compensation UBS has received or will receive in connection with its engagement; (ii) the amount of UBS's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether UBS has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by UBS for providing such services.

44. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I
**(Against All Defendants for Violation of Section 14(a) of the Exchange Act)**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any Proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

48. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

49. The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

50. Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding the valuation analyses performed by the Financial Advisors in support of their fairness opinions.

51. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

52. The Individual Defendants knew or were negligent in not knowing that the Proxy

is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that the Financial Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Financial Advisors, as well as their fairness opinions and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.

53. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Financial Advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

54. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved

in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

55. Glu Mobile is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

56. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Glu Mobile within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Glu Mobile, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

61. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

### COUNT III
**(Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)**

64. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

65. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

67. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public stockholders.

68. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights she or he possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

69. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Proposed Merger or taking any steps to consummate the Proposed

Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

      B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

      C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 18, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*